## Second Department, May, 1979

## (May 1, 1979)

■ In the Matter of Muriel Siebert, as Superintendent of Banks of the State of New York, Respondent. Citizens Savings and Loan Association of New York, Appellant.—In proceedings pursuant to sections 607 and 618 of the Banking Law, the Citizens Savings and Loan Association of New York (Citizens) appeals from an order of the Supreme Court, Queens County, dated April 19, 1979, which, after a hearing, *inter alia,* (1) held, pursuant to section 607 of the Banking Law, that the actions taken by the petitioner Superintendent of Banks in taking possession of the appellant bank were lawful and proper and (2) held that the Superintendent's plan to liquidate the assets of Citizens pursuant to the plan and agreement of merger with the Astoria Federal Savings and Loan Association was lawful and proper. Order affirmed, with costs, upon the opinion of Mr. Justice Hyman at Special Term. In addition thereto, we address ourselves to the question of whether Special Term's refusal to grant appellant an adjournment or continuance at the hearing of February 13, 1979 constituted an abuse of discretion. Review of the record indicates unequivocally that the question must be answered in the negative. On January 31, 1979, shortly after the Superintendent of Banks had taken possession of the appellant bank (see Banking Law, § 606), the Superintendent commenced the instant proceeding for judicial approval of its plan to liquidate the assets of the bank, and merge it with the Astoria Federal Savings and Loan Association (see Banking Law, § 618). The proceeding was initiated by an order to show cause in Supreme Court, Queens County, dated January 31, 1979 and a hearing was scheduled for February 13, 1979. On February 1, 1979 the appellant, Citizens, obtained a second order to show cause from Mr. Justice Hyman directing that the Superintendent show cause why her act of taking possession of the bank was justified, and why the court's January 31, 1979 order to show cause should not be vacated (see Banking Law, § 607). In

support of appellant's February 1, 1979 order to show cause, Leonard Simon, Esq., submitted an affirmation reciting, *inter alia,* that "I am, along with Simeon Golar, special counsel to Citizens Savings and Loan Association of New York. I am fully familiar with the facts and circumstances in this matter." There was no affirmation from Mr. Golar. The February 1, 1979 order to show cause, on behalf of Citizens, was returnable on February 7, 1979. On the latter date, the Superintendent (as well as numerous other State and Federal banking officials) appeared at Special Term in opposition to Citizens' order to show cause. Citizens, however, failed to take the opportunity to examine the expert witnesses present, or to introduce any evidence at that time. Rather, oral argument was heard from counsel for Citizens with respect to what section 607 of the Banking Law entailed, and concerning discovery. Mr. Golar shouldered most of this argument, stating at one point that, "I think Judge, the case can be decided on the papers." Significantly, cocounsel Simon participated extensively in this argument, too. Following the colloquy, the court consolidated both the Citizens' and the Superintendent's orders to show cause for hearings on February 13, 1979 to prevent a "multiplicity of arguments". The return date of February 13 was the date that the Superintendent's hearing had originally been scheduled. Citizens agreed to the adjournment. Special Term further directed that the Superintendent would be required to go forward with proof of the validity of her actions in taking possession of the bank before the presentation of Citizens' case. On February 9, 1979 Citizens subpoenaed two of its former vice-presidents to testify at the consolidated hearing. On February 13, 1979 the Superintendent, together with State and Federal officials, again appeared at Special Term. On behalf of Citizens, Mr. Simon and an associate appeared and immediately answered "ready" at the call of the calendar. Mr. Simon added shortly thereafter that "We are prepared to move ahead in the commencement of the hearing" and that "we're prepared to put our witnesses on as well". Since Citizens had never actually served an answer to the proceeding instituted by the Superintendent, Special Term deemed all of the allegations contained in the Superintendent's affidavit denied, whereupon the Superintendent indicated that the witnesses requested by Citizens, expert real estate appraisers, were present in the courtroom. A colloquy ensued between Mr. Simon and Special Term concerning the necessity for the production of a certain Banking Department dossier which would allegedly prove the Superintendent's personal animosity as the underlying motivation for her taking possession of appellant. Special Term denied this application. Following this colloquy, Mr. Simon requested an adjournment based upon Mr. Golar's absence. Mr. Simon stated that his cocounsel had a dental emergency and the hearing could not proceed without him (although he submitted no affidavit to this effect). This was the first indication that Mr. Simon was not going to try the case on behalf of his client, coming after no less than three assurances of readiness and extensive prior involvement in the matter. Special Term denied this application. The Superintendent then proceeded to present her case by submitting a document referred to as the "Statement of the Superintendent", an official detailed report of Citizens' financial posture from 1975 to 1978. This document, containing the reasons for the Superintendent's actions, was prepared pursuant to, and admissible under, section 612 of the Banking Law as "presumptive evidence of the facts therein stated." Special Term deemed the document the Superintendent's prima facie case and consequently declined the Superintendent's offer to call "supplemental" witnesses in support of the report. At this point, the Superintendent rested. Citizens then moved again for an adjournment to

prepare a motion to dismiss, and to consider its case. Special Term granted an adjournment until 2:15 P.M. After this adjournment, Citizens renewed its application for a further adjournment. It became apparent that Citizens was not prepared to proceed with a hearing for the additional reason that neither of its real estate appraisers was available. After this motion was denied, Citizens moved to dismiss the Superintendent's proceeding predicated upon her failure to establish a prima facie case justifying her seizure of the bank. Despite the presence of such potential key witnesses in the courtroom as the Superintendent, the Deputy Superintendent of Banks in charge of the Thrift Institutions Division, the Supervising and Assistant Bank Examiner of the August, 1978 bank examination, the Chief Real Estate Appraiser of the Banking Department, two of Citizens former vice-presidents appearing pursuant to *Mr. Simon's* subpoenas, and the former president of Citizens, Mr. Simon steadfastly refused to call a single witness or offer any evidence in opposition to the Superintendent's prima facie case. Thereupon, after the denial of Mr. Simon's final motion to adjourn, Special Term reserved decision. Following the hearing, both sides submitted extensive posthearing memoranda. However, it was revealed at oral argument before this court that appellant's posthearing memorandum totally failed to raise any issue concerning Special Term's refusal to grant the adjournment. Moreover, in the interim between the February 13, 1979 date of the hearing, and Mr. Justice Hyman's decision nearly seven weeks later, no application was made by Citizens to remedy any defect caused by Special Term's refusal to grant the adjournment. Mr. Justice Hyman's decision confirming the Superintendent's plan and agreement of merger followed on April 3, 1979. Under these circumstances, we· cannot say that the denial of an adjournment or a continuance to Mr. Simon was an abuse of discretion. Mr. Simon, an experienced attorney admitted to practice in 1961, maintained and represented throughout this matter that he was attorney of record. The hearing minutes demonstrate that Citizens was aware, since January 31, 1979, that the matter would be heard on February 13, 1979, as well as the fact that the Superintendent intended to establish her prima facie case by presentation of the section 612 official document. Equally clear is the fact that the courtroom was crowded with the key participants of the controversy, including persons subpoenaed by Mr. Simon himself. It is difficult to escape the conclusion that Citizens never intended to go forward in good faith with any proof to controvert the Superintendent's prima facie case. In light of the necessity to conclude the matter with dispatch, Special Term was justified in refusing to delay the completion of the proceedings instituted by both the Superintendent and Citizens itself. (See *Matter of Karen H.,* 51 AD2d 909; *Bilyou v State of New York,* 33 AD2d 604; *Matter of Case,* 24 AD2d 797; *Zirn v Bradley,* 270 App Div 829.) Gulotta, Cohalan and Margett, JJ., concur.

Lazer, J. P., dissents and votes to reverse the order and to remand the proceedings to Special Term for a new hearing, with the following memorandum: I agree with my colleagues that the Superintendent's reasons for taking possession of the Citizens Savings and Loan Association of New York and merging it with the Astoria Federal Savings and Loan Association seem absolutely valid. Nevertheless, despite the utterly inept fashion in which Citizens sought a continuance after the hearing commenced on February 13, 1979, and bearing in mind that its sudden request for such relief constituted a gross imposition on the various Federal and State officials present in the court ready to proceed, I still believe it was an improvident exercise of discretion for Special Term to have refused a one-day adjournment. Al-

though the circumstances of the case scarcely indicate that Citizens could have succeeded in blocking its dissolution, it should not have been consigned to oblivion without a further opportunity to test the truth and validity of the Superintendent's statement. [99 Misc 2d 32.]