OPINION OF THE COURT
C. Raymond Radigan, J.
This proceeding was commenced by the executor, Bank of New York, for a construction of article third of decedent’s will. That portion of article third upon which construction is sought reads as follows: "If my wife gloria palatsky boyd survives me, I give to my trustee an amount, if any, equal to the elective share which my wife would, except for this paragraph (A), be entitled to elect to take as my surviving spouse under the laws of the State of New York in effect at the time of my death, less the value of any property passing to her as a testamentary substitute (as that term is defined in Section 5-1.1 of the New York Estate, Powers and Trusts Law), to be held in trust.”
The decedent died December 30, 1992, after the effective date of the new right of election statute, EPTL 5-1.1-A, which expanded the list of testamentary substitutes (see, L 1992, ch 595; see also, First Report to the Legislature of the EPTL Advisory Committee). The threshold question presented is whether the testamentary substitutes referred to in article third should be determined pursuant to the law in effect at the time of decedent’s death, i.e., EPTL 5-1.1-A, or that in effect at the time of the will’s execution, i.e., EPTL 5-1.1, as directed in decedent’s will.
Both the attorney for the surviving spouse and the guardian ad litem appointed to represent the infant beneficiaries are in accord that the operative statute is the new EPTL 5-1.1-A. The petitioner’s attorney, who was also the attorney-draftsman, reaches the same conclusion.
The law is well settled that to determine the meaning and effect of a decedent’s will, the law in effect at the time of *193 decedent’s death is controlling (Matter of Gaffken, 197 App Div 257, affd 233 NY 688; McKinney’s Cons Laws of NY, Book 1, Statutes § 56) and that testators are presumed to know that laws affecting distribution of decedents’ estates can be changed at any time (Matter of Lewin, 27 AD2d 971). The Legislature could have amended the existing EPTL 5-1.1 and no issue would or could be raised because of Mr. Boyd’s reference to it in his will; the fact that the Legislature determined to enact the amendments under a new section, EPTL 5-1.1-A, should not create an issue where none exists.
The court, being convinced that the new statute should control, will now address the substantive questions presented by the application of the statute to the facts.
The decedent herein died survived by a spouse and children of a prior marriage. The particular assets of which the decedent died possessed upon which instruction is sought are:
1. the marital residence, held by the decedent and his wife as tenants by the entirety;
2. a checking account in the joint names of the decedent and his wife;
3. a savings account in the joint names of the decedent and his wife;
4. an IRA account, held in the decedent’s name and payable on his death to his wife;
5. a life insurance policy, owned by the decedent over which he retained the right to change the beneficiary designation, payable on death to his wife; and
6. a Veteran’s Administration life insurance policy, owned by the decedent over which he retained the right to change the beneficiary designation, payable to the decedent’s children.
With regard to the marital residence and the checking and savings accounts, all three of those assets are testamentary substitutes in the proportion that the funds on deposit were the property of the decedent immediately before the deposit, or the consideration for the property was furnished by the decedent (EPTL 5-1.1-A [b] [1] [E]; [2]). The general rule is that the surviving spouse has the burden of establishing the proportion of the decedent’s contribution, but where the surviving spouse is the other party to the transaction, it is conclusively presumed that the proportion of the decedent’s contribution is one half (EPTL 5-1.1-A [b] [2]). Accordingly, the residence and the joint checking and savings accounts are to be considered *194 testamentary substitutes to the extent of one half of their value on the date of decedent’s death.
With regard to the IRA account, it was opened prior to September 1, 1992, the effective date of the new statute, and the beneficiary designation was not changed thereafter. Therefore, the IRA account should not be considered a testamentary substitute (EPTL 5-1.1-A [b] [1] [G]).
The question of the life insurance policies as testamentary substitutes presents a much more difficult issue, one which pits the court’s responsibility to fulfill the intent of the Legislature in the just application of its statutes against the court’s solemn duty not to encroach on the legislative domain by judicial trespass.
The guardian ad litem argues that life insurance policies should be considered testamentary substitutes by application of EPTL 5-1.1-A (b) (1) (F). In pertinent part, the statute includes as a testamentary substitute r[a]ny * * * contractual arrangement made by the decedent, in trust or otherwise, to the extent that the decedent * * * at the date of his * * * death retained * * * by the express provisions of the disposing instrument, a power to revoke such disposition or a power to consume, invade or dispose of the principal thereof’ (emphasis added).
Counsel for the surviving spouse argues forcefully that the legislative history of the new statute leaves no doubt that the Legislature enacted EPTL 5-1.1-A on the understanding that the proceeds of life insurance policies would not be considered testamentary substitutes. In fact, counsel’s memorandum of law contains segments of colloquy between the then chair of the Senate Judiciary Committee and another Senator from which it appears that the Senators indeed believed that life insurance would not be considered a testamentary substitute.
The guardian ad litem on the other hand argues that the statute as written is clear and unambiguous on its face, precluding the court from further inquiry regarding the legislative intent.
"Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76). Judge Cardozo has written that the court’s freedom to construe a statute is not freedom to amend it (Sexauer & Lemke v Burke & Sons Co., 228 NY 341). Also, "[ujnder the doctrine of *195 separation of powers, courts may not legislate * * * or rewrite * * * or extend legislation [citations omitted]” (Matter of Siebert, 99 Misc 2d 32, 41).
Generally a statute is to be construed according to the ordinary meaning of its words (Sega v State of New York, 60 NY2d 183) and, as the United States Supreme Court stated, there is no better indication of legislative intent than the plain words used in a statute, but when those words lead to variance with the obvious legislative intent, the court must look beyond the exact words used (United States v American Trucking Assns., 310 US 534).
And, as the Court of Appeals has indicated "the absence of ambiguity facially is never conclusive. Sound principles of statutory interpretation generally require examination of a statute’s legislative history and context to determine its meaning and scope” (Uniformed Firefighters Assn. v Beekman, 52 NY2d 463, 471; New York State Bankers Assn. v Albright, 38 NY2d 430, 434).
EPTL 5-1.1-A (b) (1) (F) includes as a testamentary substitute, "[a]ny * * * contractual arrangement * * * in trust or otherwise, to the extent that the decedent * * * at the date of his * * * death retained * * * by the express provisions of the disposing instrument, a power to revoke such disposition or a power to consume, invade or dispose of the principal thereof’ (emphasis added) without limiting the scope of the statute to exclude insurance. The court finds the decedent’s life insurance contracts could fall within the ambit of "[a]ny” such contract.
Having so concluded, is the court foreclosed from any further inquiry regarding the inclusion of life insurance as a testamentary substitute? The court would answer that question in the affirmative but for the overwhelming evidence of legislative intent that life insurance was not to be considered a testamentary substitute.
The court has reviewed the entire Bill Jacket to the legislation enacted by Laws of 1992 (ch 595), and concludes from that review that the legislation was enacted with the belief the life insurance was not among those assets to be considered as testamentary substitutes. Initially, the bill contained a provision which expressly included life insurance as a testamentary substitute; it also did not contain a provision similar to that in the previous statute, EPTL 5-1.1 (b) (2), which expressly placed life insurance beyond the reach of the *196 spousal right of election. The original version of the bill passed the Assembly. However, when considered by the Senate, opposition arose to the inclusion of life insurance as a testamentary substitute. As alluded to by counsel to the surviving spouse in the case now before the court, the debate on the bill as a whole was complicated by the insurance issue. When the debate resumed after a recess, the Senators were assured that the bill had been amended to delete the inclusion of life insurance as a testamentary substitute. Query, did it? The revision removed the provision which had included insurance that was recommended by the Advisory Committee but failed to reinstate EPTL 5-1.1 (b) (2) which excluded insurance as a testamentary substitute in section 5-1.1-A. Thus, does EPTL 5-1.1-A (b) (1) (F) cause insurance to be a testamentary substitute? That is the ambiguity and if it were not for the legislative history and debate regarding the issue, the court would find that it does. A vote was taken and the bill passed as amended. It appears, based on the legislative process, that the Senate would not have approved the bill if insurance was to be a testamentary substitute.
The amended bill then went back to the Assembly where it was passed in its amended form. There does not appear to have been any debate in the Assembly prior to the second vote. The court notes, however, that a letter from the then-chairman of the Judiciary Committee to the Governor’s counsel urging the Governor’s approval of the bill clearly indicates that the list of testamentary substitutes would be expanded by the bill, but makes express reference to the fact that life insurance is not among them.
Thus, while the literal language of the statute would lead one to believe life insurance was to be a testamentary substitute, the legislative history overwhelmingly leads to the conclusion that that result was not intended by the Legislature. In such cases, courts may search beyond the plain language of a statute when an ambiguity is found to ascertain if the language employed clearly expresses the legislative intent (Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, affd 65 NY2d 807). The legislative intent here was clearly not to include life insurance as a testamentary substitute.
In a similar situation involving opposition to a proposed amendment providing for the insertion in the statute of certain words and their later deletion, the court sought guidance from the legislative history to determine the intent of *197 the Legislature in deleting the words which were proposed to be inserted (Travis v American Cities Co., 192 App Div 16).
Here, similarly, the proposed amendment sought to insert life insurance which, following debate by the Legislature, was deleted evidencing a clear intent to exclude life insurance as a testamentary substitute and the court so finds.
It is with great trepidation that this court presumes to place a construction on a statute which otherwise could be considered clear and unambiguous on its face. And while it may be a better remedy for the Legislature to amend EPTL 5-1.1-A to include a provision similar to EPTL 5-1.1 (b) (2), if that be its intent, the court feels constrained to construe the new statute, EPTL 5-1.1-A (b) (1) (F), such that life insurance contracts are to be considered excluded from the list of testamentary substitutes.
The court also notes from the Bill Jackets and this Surrogate’s participation as chair of the Advisory Committee that those opposed to the inclusion of life insurance as a testamentary substitute were opposed for varying reasons; some thought that the inclusion of life insurance should have only a prospective application while others seemed most concerned about protecting life insurance trusts or policies created to finance a child’s education from the reach of the right of election statute. Some indicated that perhaps insurance should be a testamentary substitute only if the beneficiary were a nonfamily member. Others were opposed to the inclusion of life insurance where the surviving spouse was a beneficiary since the right of election would be diminished. Those same advocates, while wishing to save the status quo for existing policies, were concerned that the new statute may be a means of a decedent avoiding the statute by placing assets in insurance programs beyond the reach of a surviving spouse. In its possible reconsideration of the statute, the Legislature may wish to explore these alternatives to outright exclusion by possibly making future policies subject to the statute and perhaps limiting same to where nonclose relatives are beneficiaries.