Matter of Greenough (2024 NY Slip Op 24276)

[*1]

Matter of Greenough

2024 NY Slip Op 24276

Decided on October 24, 2024

Surrogate's Court, Monroe County

Ciaccio, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 24, 2024
Surrogate's Court, Monroe County

In the Matter of the Application of Samantha Greenough 
 for a Determination under Section 5-1.1-A of the Estates, Powers & Trusts Law 
 for the Validity of a Right of Election in the Estate of Brian Greenough, Deceased.

File No. 2023-2574/B

Jane F. Graham, Esq. and Lindsay M. McKenna, Esq., Bond, Schoeneck & King, PLLC, Rochester, New York, Attorneys for Samantha Greenough, Petitioner. 
Robert K. Greenough, Jr., Esq., Syracuse, New York, Attorney for William J. Greenough and Stephany Greenough, Respondents. 

Christopher S. Ciaccio, S.

The issue presented is whether a $50,000.00 death benefit provided by the decedent's employer, and payable to decedent's spouse, is a testamentary substitute to be included in the calculation of the elective share of the decedent's spouse.
Even though the death benefit is akin to a term life policy, it cannot serve as a testamentary substitute.
DISCUSSION
Decedent died intestate; his wife is the sole distributee. At death he owned a vehicle, which the spouse received pursuant to EPTL 5-2.1 (a) (5). He had a checking account, which went to pay funeral expenses. The remaining assets were a Fidelity Retirement account valued at $3,695.00, and a UBS Retirement account with a value of $37.590.00, on which he had named his parents as beneficiaries. 
Following the appointment of the spouse as administrator, she filed a petition seeking to claim a right of election pursuant to EPTL 5-1.1-A. Thus, the spouse seeks to claim the entirety of the UBS account to partially satisfy her elective share entitlement of $50,000.00. 
On the return date of the petition, decedent's parents, William and Stephany Greenough, appeared by their attorney, who stated that they wished to contest the use of the UBS account to [*2]satisfy the spouse's elective share, on the ground that the spouse had also received a payment of $50,000.00 as a death benefit from decedent's employer, Wegmans Food Markets; that the death benefit is essentially life insurance and that pursuant to EPTL 5-1.1-A (b) (1) (F) life insurance should be considered a testamentary substitute.
Formal objections were not filed, however, counsel for the parents filed with the court a "Memo of Law."
At a further argument counsel for both parties agreed that although issue had not been joined, they wished the court to rule on the issue as if issue had been joined (neither side desiring to expend money in future legal fees), and the facts as known with no additional exposition. 
EPTL 5-1.1-A (b) (1) (F) includes as a testamentary substitute, "[a]ny disposition of property or contractual arrangement ... in trust or otherwise, to the extent that the decedent ... at the date of his ... death retained ... by the express provisions of the disposing instrument, a power to revoke such disposition or a power to consume, invade or dispose of the principal thereof" (emphasis added)." No language in the statute specifically excludes life insurance from its application, however, a disposition of "property" that can be revoked prior to death sounds a lot like term life insurance, and property that has "principal" which can be invaded or consumed sound a lot like whole life insurance, which has a cash value component.
EPTL 5-1.1-A (b) (1) (F) is the product of an amendment of EPTL 5-1.1 in 1992 (Chapter Laws 1992, ch 595).
The predecessor statute contained the language quoted above regarding "any disposition of property or contractual arrangement " but also contained a provision that specifically excluded life insurance (and other financial assets, such as, for example, retirement accounts) as a testamentary substitute subject to the spousal right of election. That exclusionary provision read as follows:
"EPTL 5-1.1 (b) (2)(B): money payable by an insurance company or a savings bank authorized to conduct the business of life insurance under an annuity or pure endowment contract, a policy of life, group life, industrial life or accident and health insurance or a contract by such insurer relating to the payment of proceeds or avails thereof "
The amended statute deleted the language above. The specific exclusion of life insurance having been deleted, the conclusion naturally follows that the Legislature intended life insurance to be included as a testamentary substitute, otherwise, would they not have left the exclusionary language untouched? Why exclude it, when the language of "any disposition of property or contractual arrangement" capable of being revoked sounds on its face like an accurate description of life insurance?
The Nassau County Surrogate's Judge C. Raymond Radigan took up that question in Matter of Boyd, 161 Misc 2d 191 (Sur Ct, Nassau County 1994). There the decedent had two life insurance policies on which the beneficiary designation could be changed. 
Judge Radigan found that "the decedent's life insurance contracts could fall within the ambit of '[a]ny' such contract" (Boyd at 195). He stated further that the language of the statute was "clear and unambiguous on its face" (Boyd at 197).
Nonetheless, he undertook, "with great trepidation," (Boyd at 197) a review of the legislative history of EPTL 5-1.1, in which he found "overwhelming evidence of legislative intent that life insurance was not to be considered a testamentary substitute" (Boyd at 195).
In classic and characteristic language, Judge Radigan framed the issue as thus:
"The question of the life insurance policies as testamentary substitutes presents a difficult issue, one which pits the court's responsibility to fulfill the intent of the Legislature in the just application of its statutes against the court's solemn duty not to encroach on the legislative domain by judicial trespass" (Boyd at 194).
In reviewing the legislative history, Judge Radigan concluded "that the Senate would not have approved the bill if insurance was to be a testamentary substitute" (Boyd at 196).
His conclusion was cemented by "a letter from the then-chairman of the Senate Judiciary Committee to the Governor's counsel urging the Governor's approval of the bill clearly (indicating) that the list of testamentary substitutes would be expanded by the bill but makes express reference to the fact that life insurance is not among them" (Boyd at 196).
In Judge Radigan's telling of the history of the amended statute, an Assembly version of the bill amending EPTL 5-1.1 included a provision specially stating that life insurance would be considered a testamentary substitute. The Senate balked. The revised version deleted the reference to life insurance as a testamentary substitute, but also did not include the reference in the predecessor statute that specifically excluded life insurance from the right of election.
Notable among the entries in the bill jacket that Judge Radigan likely relied upon was a letter the chairman of the Life Insurance Council of New York wrote in June 1992 to the Governor, stating his group's opposition to the inclusion of life insurance as a testamentary substitute and which listed several compelling reasons. Separately, the head of the New York State Association of Underwriters also wrote the Governor and voiced his opposition. One month later, however, in July 1992, Assemblyman Oliver Koppell issued his letter in support of the amended statute and assured the governor's office that life insurance would not (emphasis added) be considered a testamentary substitute under the amended statute. 
It seems obvious — as it was to the knowledgeable Judge Radigan, who was a member of the Surrogate Judges Advisory Committee at the time (and still is) - that an unstated compromise between the Assembly and the Senate was reached, one influenced by the life insurance industry, and one that left a smidgen of ambiguity as to whether the courts would interpret the new statute to include life insurance as a testamentary substitute. Perhaps the Assembly felt that without the exclusionary provision of the prior EPTL 5-1-1 (b) (2), the case law might possibly hold some day that life insurance to be included as a testamentary substitute. But that is not what happened.
Remarkedly, few cases have been decided on this issue.
Surrogate Judge Holzman in Bronx County, in Matter of Green (18 Misc 3d 1116[A], 2008 NY Slip Op 50100[U], *1,*2 [Sur Ct, Bronx County 2008]) held that "The spouse's contention that life insurance is a testamentary substitute under either EPTL 5—1.1—A(b)(1)(F) or (G) has been considered and rejected by numerous courts" (citations omitted) even though as he says, that his analysis "might start by noting that the statute, without any ambiguity, clearly provides that life insurance is a testamentary substitute under EPTL 5—1.1—A(b)(1)(F) because it is a disposition or contractual arrangement under which the decedent retains the power to obtain the cash surrender value of the policy or to designate a different beneficiary, including the estate of the insured."
The Appellate Division, Fourth Department, in Matter of Zupa, 48 AD3d 1036, 1037 [4th Dept 2008] took up the issue of whether annuities were to be considered life insurance and thus not testamentary substitutes. It ruled that annuities are not insurance against which the right of election can be exercised, but in doing so first noted with approval Judge Radigan's conclusion that "the legislative history indicated that life insurance was not to be considered a testamentary substitute (id. at 195-196)" (Matter of Zupa, 48 AD3d 1036, 1037 [4th Dept 2008]). And it affirmed the holding and analysis of the Erie County Surrogate Judge Howe, who stated equally plainly that "Legislative history makes amply clear that life insurance was not, however, intended to be a testamentary substitute under the statute" (Matter of Zupa, 22 Misc 3d 1104(A), 2006 NY Slip Op 52679[U], *4 [Sur Ct, Erie County 2006], citing Matter of Boyd, 161 Misc 2d 191).
Judge Radigan acknowledged the inequities that might result from the "outright exclusion" (Boyd at 197) of life insurance from the right of election, such as, for example, where a spouse has placed all assets in insurance so as to be beyond the reach of an estranged spouse, and he suggests "the Legislature may wish to explore" limitations on the outright exclusion of life insurance in all instances (Boyd at 197-198). Certainly, this court can envision a different result being reached in a case involving an inequitable use of the life insurance exclusion. After all, if it is true that the statute allows for no ambiguity, as Surrogate Judges Radigan Howe and Holzman acknowledged, another judge might feel no need to consider the legislative history and thus press forward to apply the statute as it is written especially when the interests of "widows and orphans" have been negatively impacted.
Judge Radigan is a respected authority, possibly the most respected and followed authority among the past and present Surrogate judges, but his decisions are not binding on a fellow Surrogate judge, in the way an Appellate Division decision is. Surrogate courts are unique in that the case law that the Surrogate judges rely upon is developed almost entirely by the Surrogate judges, not by the appellate courts. 
Such analysis might start by noting that the statute, without any ambiguity, clearly provides that life insurance is a testamentary substitute under EPTL 5—1.1—A (b) (1) (F) because it is a disposition or contractual arrangement under which the decedent retains the power to obtain the cash surrender value of the policy or to designate a different beneficiary, including the [*3]estate of the insured (Matter of Green, 18 Misc 3d 1116(A), 2008 NY Slip Op 50100[U] [Sur Ct, Bronx County 2008]).
However, in the case at bar, given that the payout at issue is going to the spouse, and no facts having been presented that speak to some inequity, the death benefit here is to be considered not as a testamentary substitute. Therefore, the petition is granted, the objections such as they are, are dismissed. The petitioner can use the UBS policy to partially satisfy her elective share under EPTL 5-1.1.
Counsel for the Petitioner shall submit an Order.
Dated: October 24, 2024
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate's Court Judge