Foster, J.
Plaintiff, Bright Homes, Inc., the appellant herein, was granted a summary declaratory judgment by the Supreme Court in Erie County to the effect that rent controls in the City of Lackawanna ended July 1, 1959. The Appellate Division has reversed such judgment by a divided court, and granted the cross motion of the State Rent Administrator, as an intervenor, for summary judgment to the effect that rent controls as to occupied residential space in the City of Lackawanna did not end on June 30,1959.
Appellant is the owner of Albright Court, a housing project in the City of Lackawanna, Erie County, containing 36 apartment buildings, each with 4 or more apartments. The legal *160 problem presented by this case is whether rent controls still apply to appellant’s property, or whether they ended on June 30, 1959 in accordance with a resolution of the Common Council of the City of Lackawanna adopted on June 25, 1957. The language of the resolution is as follows:
" It is hereby declared that an emergency exists in the City of Lackawanna due to.the shortage of housing accommodations, by reason of such emergency, the Common Council of the City of Lackawanna hereby elects pursuant to the statutes in such case made and provided to continue the application of rent control on all housing accommodations except 1, 2 and 3-family houses whether or not occupied by the landlord.
1 " A certified copy of this resolution shall be forthwith transmitted to the Temporary State Housing Bent Control Commission.
‘ ' This resolution shall remain in full force and effect until June 30,1959.”
The Appellate Division has held that the terminal date fixed in the resolution should be treated as surplusage, and ergo that rent controls still exist in Lackawanna. The effect of this decision is somewhat more extensive than its language might indicate, for if the decision is correct the city is now powerless to decontrol rents and hence, presumably, controls would continue indefinitely (L. 1959, ch. 695). By the statute cited the Legislature froze all residential rents in communities which had elected prior to June 30, .1957 to continue controls "without a terminal date.
The theory that the terminal section of the resolution was to be treated as surplusage was arrived at by a process of interpretation. The court below said in substance that the contemporary history of rent control statutes and their historical background indicated that the Common Council did not intend to limit the resolution to the date fixed — in other words that the expiration date used in the resolution should be treated as a " mere vestige of the language used by the draftsman ’ ’. This rather vague language is taken from an opinion in the case of Matter of Carter v. Kalamejski (255 App. Div. 694, 699, affd. 280 N. Y. 803), and there it doubtless had a logical sequence. Section 872 of the Education Law was in part rewritten into section 312-a of the same statute, and by oversight an incon *161 sistent part of a sentence from 872 was allowed to remain in the new section. Hence the holding that the inconsistent language was an error in draftsmanship. Here we are unable to perceive how the declaration of a terminal date is a vestige of anything, or other than a plain and forthright statement of intention. It cannot be excised without resort to judicial conjecture and surmise.
There is of course a general legislative history of rent controls. In 1950 the State took over exclusive control of residential rents (L. 1950, ch. 250). In 1951 the State Residential Rent Law was substantially amended (L. 1951, ch. 443), and this enactmént provided that the act should terminate on June 30, 1953. Thereafter legislation was adopted to continue various controls for two-year periods (L. 1953, ch. 321; L. 1955, ch. 685; L. 1957, ch. 755; L. 1959, ch. 695). The State enactment we are immediately concerned with is that passed in 1957 (L. 1957, ch. 755). This enactment provided in part that rent controls in any city or town in three named counties, including Erie County, were terminated on June 30, 1957, except that the governing body of such a municipality by resolution, adopted no later than June 30, 1957, declaring the continuance of emergency conditions, could elect to be excluded from the termination date of rent controls “ to the extent specified in such resolution.'” (Emphasis supplied.) It was under the terms of this statute that the resolution in question was drawn. Under the public policy of the State, as manifested by the Legislature, the Common Council could have abandoned rent control entirely. It chose not to do so but limited the extension to June 30, 1959 in language that is plain and unambiguous. The court below has indicated that a determination in advance that an emergency would cease to exist amounted to clairvoyance. The same accusation of clairvoyance might be leveled against the State Legislature in connection with its various enactments of rent control. But this line of reasoning is beside the point. Whether it was anticipated or not that the emergency would cease to exist the council nevertheless had power to terminate controls.
It is true of course that the literal language of a statute is not always controlling in the interpretation thereof, but this is a principle to be adopted with extreme caution and only where the plain intent and purpose of a statute would otherwise be *162 defeated. We have no such clear-cut case here, and it cannot be assumed that the terminal date fixed in the resolution was intended to have no purpose. The rule is quite to the contrary, and every phrase in a legislative enactment must he given its ordinary and consistent meaning (Matter of New York & Brooklyn Bridge, 72 N. Y. 527; Matter of Smathers, 309 N. Y. 487). The reason for this is clear. Courts are not supposed to legislate under the guise of interpretation, and in the long run it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist. If harm has been done by the resolution in question there is nothing about it that cannot be corrected by the Legislature. In any event the legislative intent of the Common Council of Lackawanna must be determined primarily from the language of its resolution (Meltzer v. Koenigsberg, 302 N. Y. 523; McKuskie v. Hendrickson, 128 N. Y. 555). This language is strongly indicative that the Common Council did not want rent control for more than two more years, and there is nothing whatever to indicate that it wanted controls continued indefinitely.
The judgment should be reversed, without costs, the cross motion denied, and the judgment of the Special Term granting a summary declaratory judgment in favor of the plaintiff should be reinstated.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment of Appellate Division reversed and that of Special Term reinstated, without costs.