OPINION OF THE COURT
Harold Hyman, J.
On January 31, 1979, this court signed an order to show cause at the request and upon the application of Muriel Siebert in her capacity as Superintendent of Banks of the *34 State of New York. The application, in part, was based upon her formally executed certification (dated that day) that "I have taken possession of Citizens Savings and Loan Association of New York * * * pursuant to Banking Law Section 606 on the grounds that such banking organization: (1) is conducting its business in an unauthorized and unsafe manner; (2) is in an unsound and unsafe condition to transact business; and (3) cannot with safety and expediency continue business.”
The application also contained an affidavit of said superintendent indicating that, pursuant to section 606 of the Banking Law, she had taken possession of the business and property of Citizens at 3:00 p.m. that day; and, that she sought authorization by court order, pursuant to section 618 of the Banking Law "to dispose of all the real and personal property of Citizens * * * by effecting the Plan and Agreement of Merger * * * of Citizens into Astoria Federal Savings and Loan Association”; a copy of the "Plan” was annexed.
Additionally, there was annexed to the application a duly subscribed and acknowledged written statement reciting her determinations made and her acts performed pursuant to the powers vested and duties imposed upon her, as the superintendent pursuant to article 13 of the Banking Law.
There can be no doubt that the above statement and the certificate were, and are entitled to be, regarded as presumptive evidence of the facts therein stated, "in any action or proceeding now pending or hereafter commenced”. (Banking Law, § 612.)
Beyond cavil the superintendent has complete discretion to take possession of any banking organization "whenever it shall appear (to her) that such banking organization * * * (b) Is conducting its business in an unauthorized or unsafe manner; (c) Is in an unsound or unsafe condition to transact its business; [and] (d) Cannot with safety and expediency continue business”. (Banking Law, § 606, subd 1.)
The authority to take possession of a banking organization, by legislative enactment, vests in the superintendent, and is not as a result of any court proceeding (Matter of Bologh, 185 F 825); the exercising of such power is purely discretionary and is not subject to review (Matter of Union Bank of Brooklyn, 96 Misc 2d 299, revd on other grounds 176 App Div 477). However, within 10 days after the superintendent takes possession such banking organization may apply to the Supreme Court for an order requiring the superintendent to show cause *35 why she should not be enjoined from continuing such possession, and thereupon, "[t]he court may, upon good cause shown, direct the superintendent to refrain from further proceedings and to surrender such possession” (Banking Law, § 607).
The court is mindful of the fact that the Legislature has reposed in its specially constituted State official the sole power to act, following investigation, examination and determination (Matter of Union Bank of Brooklyn, 204 NY 313), and that it does not lie with the court to substitute itself for such legally constituted authority (Matter of Lunghino & Sons, 176 App Div 285), but that at best, the court merely has the right to review the superintendent’s act of "taking possession” from the judicially limited perspective of whether the superintendent acted arbitrarily, capriciously, without good cause, and/or whether there has been an abuse of her discretionary prerogative. But when the court determines the propriety and justification of the superintendent’s determination to take, and in taking possession, based upon the banking organization’s activities coming within the purview of such cause as is provided for in section 606 (subd 1, pars [a]-[j]) of the Banking Law, then it is not for the court to substitute its own opinion for that of the superintendent and to then revoke the superintendent’s discretionary act (matter of Lunghino & Sons, supra).
From past experience and unsatisfactory situations which resulted in the demand by the general public for reform, the Legislature caused to be enacted the present Banking Law and its various amendments, which has as its salutary purpose, intent, and objective, the unqualified protection and security of the general public from loss resulting from such type organization violating the law or conducting its business in an unauthorized or unsafe manner or transacting its business while in an unsound or unsafe condition, continuing business at a time when it cannot with safety and expediency do so, and such other deterrents provided for therein (Banking Law, § 606, subd 1, pars[a]-[j]). Each, or any, of the foregoing reasons or conditions, whether separately or together, constitutes a sufficient basis unto itself permitting the superintendent to act, or as more particularly stated in Matter of Union Bank of Brooklyn (204 NY 313, 316, supra). "[o]ne or more or all of the conditions specified must exist and must 'appear to the superintendent’ before he is authorized to exercise this drastic power.” The statute referred to therein is the forerun *36 ner (Banking Law, § 18, enacted by the Legislature, L 1908, ch 143) of the present statute (Banking Law, § 606).
In reviewing the discretionary act of the superintendent, and although recognizing her authority, per se, there always arises the specter, that disembodied spirit written into our Federal and State Constitutions, the fear of authoritarian violation of the principle of liberty and the right to "due process”.
The superintendent presented to the court her application seeking a "final order” (a) determining and confirming her exercise of discretion in taking, possession of the business and property of the Citizens Savings and Loan Association pursuant to section 606 of the Banking Law; and, (b) determining and confirming that the actions of said superintendent while in possession, to dispose of the real and personal property of Citizens by merger pursuant to the plan and agreement of merger, were lawful and proper, and that such plan and agreement of merger be deemed effective as of the time such action was taken. The order issued authorized the superintendent to put such plan and agreement into motion "in the interim”, but, "subject to review and final approval by the court”, and, that, during such "interim period, prior to the hearing by the court that there be kept and segregated separate books and records of all transactions”; the order to show cause was made returnable 13 days later (Feb. 13, 1979). In so doing, the court made known to the superintendent that it had in mind and intended such judicial protection as it could reasonably and judiciously afford to, and for safeguarding the rights of the alleged offending bank to "due process”, regardless of whether the bank overlooked, failed, or even refused to move pursuant to section 607 of the Banking Law on its own behalf.
The following day (Feb. 1, 1979) the bank presented its own application pursuant to section 607 of the Banking Law, seeking to enjoin the superintendent from (a) continuing in possession, (b) to refrain from further proceeding, and (c) directing that she surrender possession to said bank; such order to show cause was made returnable on February 7, 1979; but, presenting counsel for the bank were then specifically advised by the court that on that return date, the court intended to consolidate both applications for hearing on February 13, 1979 in order to avoid a multiplicity of hearings.
Therefore, when on February 7, 1979 the bank’s application *37 came on to be heard, the court consolidated for "hearing” purposes (the taking of testimony and evidence), both applications to February 13, 1979.
Counsel for the bank specifically asked what the ground rules would be on February 13 and who would start. They were promptly then and there advised, without objection from the superintendent, that the superintendent would start by proving her right to possession. The bank’s counsel had also been previously informed that the superintendent intended to rely, as to her "prima facie” case, upon section 612 of the Banking Law and the "presumption” therein legislatively provided.
On February 7, 1979, the bank’s counsel also requested "discovery of documents” and the right to photocopy such documents which they requested take place that very day, and no objection to such request was raised by the superintendent; it was therefore allowed by the court.
On the return date set for the consolidated hearing (Feb. 13, 1979), counsel for the bank requested information as to whether the superintendent’s "appraisers” were present in court so that he could call them on the part of the bank. Having received an affirmative answer, both sides marked the hearing "ready”.
Section 612 of the Banking Law provides authorization to the superintendent "to subscribe and acknowledge written statements reciting determinations made or acts performed pursuant to the powers vested and duties imposed upon the superintendent pursuant to the terms and provisions of this chapter * * * [which] shall be received in evidence in any action or proceeding * * * and shall be presumptive evidence of the facts therein stated. ” (Emphasis added.)
The superintendent offered into evidence her duly subscribed and acknowledged "statement and determination” (a true copy of said document had been included in the superintendent’s primary moving papers which were served on the bank on Jan. 31, 1979). Objection thereto having been overruled, it was received into evidence and the superintendent rested. After much colloquy the bank moved to dismiss the petition on the ground that the superintendent had not proven a prima facie case; the court denied said motion.
Counsel for the bank requested time to brief the issue, namely, "that the certificate (superintendent’s statement, pur *38 suant to section 612 of the Banking Law) doesn’t make out a case”; that request was granted.
It is now contended by the bank that: (a) section 612 of the Banking Law was not intended to relieve the superintendent from the burden of establishing by a clear preponderance of the evidence "the facts alleged as the basis for her acts” under section 606 of the Banking Law; and (b) the statutory scheme contained in article 13 of the Banking Law requires a "full evidentiary hearing”, with respect to such "taking possession” by the superintendent, pursuant to section 607 of the Banking Law.
In regard to (a) above, the bank contends that section 612 (the presumption statute) cannot be used to subvert the meaning of section 607. Although recognizing that the cases of Broderick v Betco Corp. (149 Misc 245, affd 244 App Div 710, affd 269 NY 642) and Broderick v Adamson (148 Misc 353, affd 244 App Div 708, affd 270 NY 228) support the utilization of a prior section (Banking Law, § 620) from which the present one (Banking Law, § 612) is derived, the bank nevertheless contends such decisions to be erroneous; but, also claiming that if it be accepted as being the correct construction of the statute, that then such statute is unconstitutional as being in violation of the bank’s right to "due process of law under the Fifth and Fourteenth Amendments of the United States Constitution.”
The court does not accept the bank’s position regarding section 612 of the Banking Law from either viewpoint raised by it.
The scheme of article 13 of the Banking Law is not of such nature that it may be emasculated within itself so as not to apply to some and not all parts thereof. If the Legislature had intended to in anywise limit the application of section 612 of the Banking Law it would have so stated. Where the language of the statute, as is in the instant matter, is not subject to more than one interpretation nor is in anywise unclear or umbiguous, a well-established principle of law dictates that the court be limited in construing the statute to determine legislative intent (Bright Homes v Wright, 8 NY2d 157, 161-162; Sexauer & Lemke v Burke & Sons Co., 228 NY 341; McKinney’s Cons Laws of NY, Book 1, Statutes, § 76); for to do otherwise, such as is requested by the bank, would, in actuality, be so-called "judicially legislating” by either modifying, extending, limiting, or in some respect, adding new and unincluded rights, liabilities or duties completely incongruous to *39 legislative enactment. Or as more aptly stated in Sexauer & Lemke v Burke & Sons Co. (supra, p 345): "Freedom to construe is not freedom to amend”, and, as also stated in Bright Homes v Wright (supra, p 262): "Courts are not supposed to legislate under the guise of interpretation * * * it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist”; and as more concisely cautioned by the court in Lawrence Constr. Corp. v State of New York (293 NY 634, 639), "[a] statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration” (see, also, Matter of Malpica-Orsini, 36 NY2d 568, 571, app dsmd 423 US 1042).
In Broderick v Adamson (148 Misc 353, supra) the certificate executed by the Superintendent of Banks came directly into focus upon objection to its use as presumptive evidence of the facts therein stated. The court below stated (p 36): "Under the statute, plaintiff [superintendent] is entitled to rest upon the certificate alone, and should not be required as part of his case to justify the facts therein stated. (Marine Trust Co. v. Nuway Devices, Inc., 204 App. Div. 752.) To hold to the contrary would clearly impair or destroy the presumption and circumvent the plain purpose of the statute.”
Similarly, in Broderick v Betco Corp. (149 Misc 245, 246, supra), the court definitively held that, '[T]he certifícate executed by the plaintiff [superintendent] pursuant to section 80 of the Banking Law * * * is, in itself, by the very terms of that section, presumptive evidence of the facts therein stated.” (Emphasis added.)
It should be further observed that both of the latter aforecited two cases were affirmed by the Court of Appeals and this court finds no reason in the instant case supportive of destroying such formidable bulwarks.
With respect to the Bank’s second contention, that is, lack of "due process”, the bank contends that the court in Fahey v Mallonee (332 US 245), although upholding the Federal savings and loan system permitting ex parte taking over of the property of a savings and loan association without a prior hearing, as a proper exercise of police power, "conspicuously noted that the subject of such a takeover was accorded a subsequent hearing by such rules and regulations which *40 hearing fulfilled the procedural and substantive due process requirements mandated by the Federal Constitution”, stating: "We must assume that the supervising authorities would be able to sustain the statements of fact and to justify the conclusions in their charges for the purpose of determining the case without trial.” (332 US 245, 254, supra.)
No fault can be found with the above. It is no more nor less than that which has been afforded in the instant matter and which has taken place herein. Certainly it cannot be said that the Legislature cannot give the acts performed, the determinations made (after investigation and examination), presumptive evidence if such be contained in a formal prescribed written statement, one subscribed and acknowledged by the superintendent, so long as it contains the factual information upon which the determination by her is based. Nor can the bank complain that it did not have full opportunity (13 days) within which to prepare to and offer proof that the acts of the superintendent, in taking possession, were "arbitrary, capricious and without good cause.” As to the bank’s opportunity to do so at the "hearing”, it had on hand its own witnesses as well as the witnesses, appraisers of the superintendent it had requested be made and held available to call by it.
By offering in evidence the superintendent’s statement pursuant to section 612 of the Banking Law, and its acceptance into evidence, the superintendent proved "that her acts and determinations” were prima facie (presumptive) evidence of the "facts therein stated”. As in any other case where a presumption exists the adverse party is obliged to show that the appearance of such facts are either basically false, do not constitute a basis for the presumption, or, that even assuming the facts therein to be as stated, that nevertheless even such facts of themselves indicate that the final act of "take-over was arbitrary and capricious”, but, also, at the same time, judiciously limited to determining whether there was a rational basis for her action, that is, whether her action was based upon substantial evidence (Matter of Pell v Board of Educ., 34 NY2d 222, 231). The constitutional test is whether the bank was permitted by statute to its day in court, if it chose to have one (Granadar v Public Bank, 417 F2d 75, cert den 397 US 1065); whether it used its day in court effectively matters not, so long as it is or was available to it.
What is more, in evaluating a constitutional attack upon a statute, a court, particularly one of original jurisdiction, must *41 remember that a strong presumption of constitutionality attaches to all legislation (Defiance Milk Prods. Co. v Du Mond, 309 NY 537; Wasmuth v Allen, 14 NY2d 391, 397); and, that in enacting the statute, the Legislature had investigated and found factual need with which to support such legislation (I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269; Lincoln Bldg. Assoc. v Barr, 1 NY2d 413; East N. Y. Sav. Bank v Hahn, 293 NY 622, affd 326 US 230). What is more, the bank, seeking to declare the statute unconstitutional, had the burden to demonstrate its invalidity "beyond a reasonable doubt” (Matter of Malpica-Orsini, 36 NY2d 568, 570, supra; People v Pagnotta, 25 NY2d 333, 337; Matter of Van Berkel v Power, 16 NY2d 37, 40); this it failed to do. The above was more fully and comprehensibly set forth in Matter of Malpica-Orsinsi (supra, p 570):
"We approach the constitutional testing of this statute with certain well-established principles in mind: that a legislative enactment carries with it an exceedingly strong presumption of constitutionality; that, while this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt; that every intendment is in favor of the statute’s validity; that the party alleging unconstitutionality has a heavy burden; and that only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality. Nor may courts substitute their judgment for that of the Legislature as to the wisdom and expediency of the legislation.
"There is a further presumption that the Legislature has investigated and found facts necessary to support the legislation (I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269), as well as the existence of a situation showing or indicating its need or desirability (Matter of Van Berkel v Power, 16 NY2d 37, 40). Thus, if any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends (Matter of Spielvogel v Ford, 1 NY2d 558, 562, app dsmd 352 US 957).
"Under the doctrine of separation of powers, courts may not legislate (Bright Homes v Wright, 8 NY2d 157, 162; Matter of Metropolitan Life Ins. Co. v Boland, 281 NY 357, 361), or rewrite (Matter of Chase Nat. Bank v Guardian Realties, 283 NY 350, 360; Matter of Tormey v LaGuardia, 278 NY 450, 451), or extend legislation (People ex rel. Newman v Foster, 297 NY 27, 31; Matter of Hogan v Supreme Ct., 281 NY 572, 576).”
*42 In any event there is authority that such statutory provision (Banking Law, § 612) is constitutional (Broderick v Adamson, 148 Misc 353, supra; Broderick v Betco, 149 Misc 245, supra).
It goes without saying, that, in its enactment of the Banking Law, the State had, in the very first instance, shown very considerable concern for its residents; and, as other sovereign entities if, in the discharge of its responsibilities, it of necessity was required to enact statutes which in some respect submerged individual rights to the common good, thereby resulting in some restriction on prior unshackled liberty of some individuals or institutions, such exercise cannot be deemed constitutionally improper. The authority thus granted to a sovereign, denominated as "police powers”, enables it to thus discharge its duties without unnecessary fetters. Broad discretion is thus given to the Legislature to select the most direct and appropriate course for the promoting and for the protection of the welfare and safety of the people of the sovereign State. As was aptly stated in Atlantic Coast Line R. R. Co. v City of Goldsboro, N. C. (232 US 548, 588): "For it is settled that neither the 'contract’ clause nor the 'due process’ clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise.” Our own Court of Appeals has held that it must be emphasized that "[t]he police power of the State is the least limitable of all powers of government” (Matter of Engelsher v Jacobs, 5 NY2d 370, 373, cert den 360 US 902; see, also, State Sav. & Commercial Bank v Anderson, 165 Cal 437, affd 238 US 611).
Section 606 of the Banking Law does not, as contended by the bank, require a finding of "insolvency” before permitting the "taking possession” by the superintendent. The statute needs no base of "insolvency” for the superintendent to act. All that is necessary is one or more grounds, specified in section 606 of the Banking Law (see Peterson v State of New York, 67 AD2d 1054). What is more, the court does not have the right to read into the statute any requirement of insolvency. Had such a condition been intended by the Legislature, it certainly could have and would have so included same. The fact that it did not include "insolvency” as a necessary ingre *43 dient is sufficient unto itself of its nonnecessity and of the legislative intent not to require such. In any event, since the statute (Banking Law, § 606) is neither unclear nor subject to more than one interpretation the court, as previously stated, is limited in construing the statute to determine legislative intent (Bright Homes v Wright, 8 NY2d 157, supra; Sexauer & Lemke v Burke & Sons Co., 228 NY 341, supra), but not to "judicially legislate” by adding conditions not existent in the present statute and incongruous with it, or to legislate under the guise of interpretation by substituting its own interpretation based upon what it (the court) might have provided for therein had it been the primary enacting source. In conclusion, "solvency” or "insolvency” per se, is not required criteria in the decision-making power granted legislatively to the superintendent.
For the reasons previously set forth, and after the hearing thereon, the motion of the bank to "vacate the order of this court made and entered on January 31, 1979, and to restrain the superintendent from acting in accordance therewith” pursuant to section 607 of the Banking Law, is in all respects, denied.
Since, under section 606 of the Banking Law, the "taking possession” by the superintendent was purely discretionary on her part, and since there has not been presented any proof of such act being unlawful, arbitrary, capricious or without rationale, there is neither statutory provision nor any need for this court to either confirm or not confirm the said superintendent’s exercise of her discretion. It is, in effect, a ”fait accompli”. The superintendent’s "taking possession” is found to be lawful within the purview of section 606 of the Banking Law.
On the other hand, the superintendent’s intended disposition of the assets of the bank raises a different question.
The superintendent’s determination of the bank being "in an extremely weak and vulnerable financial condition” called into play the duty of the superintendent’s instant decision and quick action to protect the moneys of the depositors and creditors (Peterson v State of New York, 67 AD2d 1054, supra; Lunghino v Rand, 247 App Div 481), and to act by acquisition in the capacity and with the powers of a statutory receiver (Peterson v State of New York, 67 AD2d 1054, supra; Leal v Westchester Trust Co., 279 NY 25; Lafayette Trust Co. v Beggs, 213 NY 280). The superintendent, as *44 such receiver, had the power to promptly undertake liquidation of all of the bank’s assets, and to make distribution thereof to creditors and depositors; and could upon an order of the Supreme Court sell or otherwise dispose of all or any of the real and personal property of such banking organization (Banking Law, § 618, subd 1), and even to borrow money for certain specific purposes (Banking Law, § 618, subd 3).
In the instant case, the issue presented is one of whether to confirm or not the merger, permitted in the interim subject to court approval as arranged by the superintendent, of this bank, without capital stock, with the Astoria Federal Savings & Loan Association, a Federally chartered institution, one also without capital stock.
Existent as of the take-over date were 96 depository accounts which exceeded the limit of Federal Savings and Loan Insurance Corp. insurance; the 96 accounts indicated $772,000 in "uninsured deposits”, accounts of individuals who might or might not realize any portion thereof, and if they would, it would be only after protracted liquidation proceedings which might take years. The outlook for such small individual depositors whose life savings and future well-being were involved, presented a horrible picture to envisage. What also must be considered is that the closing, for liquidation purposes, would cause tremendous hardship, concern, worry and inconvenience to even those of the $3.8 million in insured accounts. The forecast was heavy and cloudy, unless the superintendent could come up with a plan and agreement of merger with an "on-going, substantial and sound institution”. To that end, the superintendent advised the Federal Savings and Loan Insurance Corporation (FSLIC) (which is a part of the Federal Home Loan Bank system of which both "Citizens” and "Astoria” were both members) that unless remedial action be taken promptly, she would take possession of Citizens’ business and property for the purpose of merging same with Astoria in accordance with a plan of merger and that she would seek court approval thereof pursuant to section 618 of the Banking Law, conditioned upon an assistance agreement between Astoria, Citizens (superintendent) and FSLIC under which FSLIC would make contribution, if necessary, to Astoria by indemnifying Astoria against certain losses it might sustain as a result of the merger.
The Federal Home Loan Bank Board approved of the plan and the merger, provided the court would primarily approve *45 of same. For all intents and purposes, no depositor, whether he be under or over the $40,000 insurable limit would be restricted in removing his funds in toto at anytime under such plan.
The Chairman of the Federal Home Loan Bank Board submitted his own affidavit indicating the agreement of FSLIC to contribute funds to prevent a default by an institutional member, to save not in excess of, the cost and expense of liquidation of such institution.
Although section 634 of the Banking Law provides that the superintendent "may, without obtaining the approval of * * * any court, sell, transfer, assign, consolidate or otherwise dispose of all or any part of the banking organization’s assets, real and personal * * * to another * * * federal savings and loan association * * * on such terms as may be determined to be in the best interests of depositors”, nevertheless the superintendent apparently believed that the approval of the court of her proposed discretionary act, in this instance, be first approved of by the court, since such approval was made an apparent condition precedent to the approval by the Federal Home Loan Bank Board in accordance with its certificate and resolution dated January 26, 1979.
The best interests of the general public, that is the depositors and creditors of Citizens, being involved; the cost to the Federal Home Loan Board or FSLIC being contingently minimal, at best, by comparison to the costs of liquidation, this court should not and will not shirk its responsibility in exercising an act purely of discretion, that is, to confirm the plan and agreement of merger as proposed.
Proof, as suggested by the bank, regarding the propriety of the plan and agreement of merger, was never required by the application and order issued. Sufficient unto themselves were the affidavits, certificates and statements attached to the moving papers as solely related to the plan and agreement of merger; this required no formal evidentiary hearing.
The propriety of the plan and merger agreements could only be attacked by the bank, upon the basis contended by it originally under section 607 of the Banking Law. Having proceeded accordingly there can be no doubt that once its application went down to defeat, the bank was left with no justiciable cause to complain that its depositors and creditors were being fully protected. Liquidation, if followed, would, on the other hand, present loss and hardship to many of its *46 depositors, creditors and friends, with possible concomitant embarrassment to the officers and employees in managerial positions. Neither of these troublesome matters were desirable or wanted. The avoidance of a "run on the bank”, and the protection against hardship or loss to the depositors, friends and creditors of the bank certainly could only be the wishes of those previously associated with Citizens.
Therefore, after due deliberation and consideration, with knowledge that to now refuse to confirm the merger would only result in liquidation with possible or probable irreparable loss to many who can ill stand such financial blow, in the best interests of the public welfare, and, "in the interests of justice” the court herewith confirms the plan and merger agreement and deems such to be effective from the commencement of the interim period, January 31, 1979. The acts of the Superintendent of Banks, in regard thereto are also hereby confirmed and approved as to her disposition of all of the real and personal property of Citizens pursuant to section 618 of the Banking Law.