OPINION OF THE COURT
Edwin Kassoff, J.
This is a proceeding pursuant to article 81 of the Mental Hygiene Law, seeking the appointment of a guardian for the personal needs and property management of the alleged incapacitated person (hereinafter AIP), John McCarthy. Petitioner now requests, in a supplemental order to show cause, that the court fashion an alternate method of service on the AIP because service by personal delivery cannot be effectuated.
Mr. McCarthy is a 65-year-old individual who resides alone in a rear, ground floor apartment at 69-17 Burchell Avenue, Far Rockaway, New York. There is no telephone in the apartment. He was referred to Protective Services for Adults on January 21, 1994 by the Director of the Rockaway Mental Health Clinic. Petitioner alleged that Mr. McCarthy is unable, to provide for his personal needs or property management in that he has a history of homelessness, living in cardboard shacks and picking food out of trash cans. Petitioner further alleged that Mr. McCarthy’s residence was extremely filthy and filled with cats, waste, opened and unopened cat food, kitty litter and organic and inorganic debris. Mr. McCarthy apparently sleeps on the kitchen floor among stray cats who enter his apartment through the window. Petitioner asserted that Mr. McCarthy’s preoccupation with feeding and caring for stray cats is to the exclusion of all other concerns, including caring for his personal well-being. He allegedly spends most of his $1,400 monthly income, which he gets from a pension plan and Social Security, on cat food, which he distributes to stray cats throughout the Rockaways. It is alleged that he spends 10 to 14 hours a day looking for stray cats and distributing food to them.
Dr. Robert Spain performed a psychiatric evaluation on Mr. McCarthy on March 1, 1994 and on October 1, 1995. Dr. Spain diagnosed him with mania, due either to bipolar disorder or schizoaffective disorder. He stated in an affirmation that when he first met Mr. McCarthy, there were cats running all around the apartment, which was filthy. He also stated that on the morning of the second evaluation, he found Mr. McCarthy sleeping on the floor. When he awoke, he was speaking in *876 thought-disordered speech about the cats. According to Dr. Spain, Mr. McCarthy has refused to pay his rent. Dr. Spain also noted that it is impossible to engage Mr. McCarthy in any rational discussion about the risk of homelessness if he does not pay rent and maintain his apartment in acceptable condition.
Petitioner filed the original order to show cause and petition on March 26, 1996. Subsequently, seven attempts were made to serve the petition and order to show cause on Mr. McCarthy by personal delivery as required by Mental Hygiene Law § 81.07 (d) (2) (i). The process server initially came to Mr. McCarthy’s apartment on April 10, 1996 at 7:15 a.m.; April 11, 1996 at 9:30 p.m.; April 12, 1996 at 10:00 p.m.; and April 13, 1996 at 7:10 a.m. In the affidavit of attempted service, the process server stated that there was no answer when he knocked on the door. The process server then made three more attempts to personally deliver the order to show cause and petition to Mr. McCarthy on April 17, 1996 at 10:15 p.m.; April 18, 1996 at 7:20 p.m.; and April 19, 1996 at 8:15 a.m. These attempts were also unsuccessful, and the process server stated in his second affidavit of attempted service, that there was no answer when he knocked on either the door or on the window of the apartment. Petitioner instructed the process server to attempt service either before 8:30 a.m. or after 7:00 p.m.
Petitioner now asserts that since Mr. McCarthy appears to be unavailable and does not have a routine or set location outside his home where he could be served, the court should fashion an alternate method of service pursuant to Mental Hygiene Law § 81.07 (d) (2) (i). Specifically, petitioner requests that the court allow the affixing of a supplemental order to show cause and supporting papers to the door of Mr. McCarthy’s residence and the mailing of these papers to his post office box if, after three attempts, petitioner is unable to personally deliver the supplemental order to show cause and supporting papers to Mr. McCarthy. Petitioner alleges that Mr. McCarthy’s lifestyle of living and sleeping among stray cats in his apartment and walking throughout the Rockaways to feed the cats prevents him from being easily routinized. Petitioner also maintains that its numerous efforts to serve Mr. McCarthy demonstrate its diligent compliance with the notice provisions of Mental Hygiene Law § 81.07. This court finds these contentions to be without merit.
The manner of service of the petition and order to show cause on an AIP in an article 81 proceeding and the procedures *877 that must be complied with are outlined in Mental Hygiene Law § 81.07. Mental Hygiene Law § 81.07 (d) (2) (i) provides, in pertinent part, that "the order to show cause and a copy of the petition shall be personally delivered to the person alleged to be incapacitated not less than fourteen days prior to the return date of the order to show cause. However, the Court may direct that the order to show cause and a copy of the petition be served on the person alleged to be incapacitated in a manner other than personal delivery when the petitioner demonstrates to the Court’s satisfaction that the person alleged to be incapacitated has refused to accept service.” Personal delivery of notice to the AIP is one of the important goals of the statute and the exception to personal delivery is a limited one (Bailly, Practice Commentaries, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.07, at 288).
The term "personal delivery” refers to in-hand service upon the AIP and is not to be confused with "personal service” under CPLR 308 (Matter of Velez v Smith, 149 AD2d 753, 754; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C308:l, at 299). Personal service encompasses five different methods of service under CPLR 308 and includes personal delivery (CPLR 308; Matter of Reilly v Scaringe, 133 AD2d 900, 901). A "refusal to accept service” is not defined anywhere in the statute. However, the Practice Commentaries following Mental Hygiene Law § 81.07 provide an illustration as to when the court may direct service on an AIP in a manner other than by personal delivery. As an example, the Commentaries state that when a reclusive person refuses to open the door to a process server, the court has the discretion to fashion a different method of service (Bailly, Practice Commentaries, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.07, at 288).
There are no reported cases that have addressed the issue of what constitutes refusal to accept service in the context of an article 81 proceeding. However, in cases decided under CPLR 308, a refusal to accept service requires some type of affirmative act by the defendant, which evidences a deliberate attempt to resist service (Bossuk v Steinberg, 58 NY2d 916, 918; Ellenbogen & Goldstein v Brandes, 215 AD2d 226; Spector v Berman, 119 AD2d 565, 566). For example, in Bossuk, there was a clear indication of refusal when the person to be served knew the process server was present and interposed a door between himself and the process server (Bossuk v Steinberg, supra, 58 NY2d, at 918). Similarly, in Spector v Berman (119 *878 AD2d 565, 566), an intention to refuse to accept service was clear when the process server buzzed the defendant’s intercom and announced that he had legal papers for him, and defendant refused to meet the process server at the entrance or allow him into the building. In these cases, the process server knew that the party to be served was at home and was actively seeking to evade service.
Applying these principles to the case at bar, the court finds that petitioner has not demonstrated that the AIP has refused to accept service or knew that service was being attempted. Petitioner has not shown that Mr. McCarthy has affirmatively sought to evade service. There is no evidence that Mr. McCarthy was even at his home during the times that service was attempted. The affidavits of attempted service merely state that there was no response when the process server knocked on the door or on the window of the apartment. While the court acknowledges that Mr. McCarthy’s habits make him a difficult individual for the process server to locate, nevertheless, this court will strictly construe Mental Hygiene Law § 81.07 and will not equate this with refusal to accept service. Petitioner must come forward with proof that Mr. McCarthy knew service was being attempted and affirmatively evaded service. In reaching its decision, the court notes that Mental Hygiene Law § 81.07 contains many safeguards designed to ensure that the AIP receive notice of a guardianship proceeding.
Though article 81 intends that the AIP receive notice of the proceeding personally, Mental Hygiene Law § 81.07 does not address the type of situation that the court is faced with in the instant case, where the AIP cannot be located and, thus, has not explicitly refused to accept service. However, it is the function of the court to interpret and enforce the law and not to create it, even though an unwise or undesirable result may occur (People v Finnegan, 85 NY2d 53, 58, cert denied — US —, 116 S Ct 311; Bender v Jamaica Hosp., 40 NY2d 560, 562; Bright Homes v Wright, 8 NY2d 157, 162). Thus, this court will not substitute its judgment for that of the Legislature. However, it calls upon the Legislature to revisit Mental Hygiene Law § 81.07 in light of the result reached in this case.
Accordingly, petitioner’s request that the court fashion an alternate method of service on the AIP is denied.