OPINION OF THE COURT
Peradotto, J.
The primary question presented by this appeal is whether a prevailing plaintiff in a sex discrimination action against the State may recover attorneys’ fees and expenses pursuant to the New York State Equal Access to Justice Act (EAJA) (CPLR art 86). We agree with plaintiff and her former attorney, appellant Emmelyn Logan-Baldwin, that they are entitled to seek attorneys’ fees and expenses under the plain language of the EAJA.
Facts and Procedural History
Plaintiff, a former State Trooper, commenced this action in 1995 alleging that she was subjected to discrimination on the *190 basis of sex and to acts of sexual harassment and retaliation; she also alleged that she was exposed to a hostile work environment for approximately 15 years. Plaintiff asserted violations of, inter alia, the Human Rights Law (Executive Law art 15) and sought compensatory damages, declaratory and injunctive relief, and reinstatement as a State Trooper. Plaintiff was awarded damages upon a jury verdict in her favor, and this Court affirmed that judgment on a prior appeal (Kimmel v State of New York, 49 AD3d 1210 [2008], lv dismissed 11 NY3d 729 [2008]). Thereafter, plaintiff and Logan-Baldwin each moved for, inter alia, an award of attorneys’ fees and expenses pursuant to the EAJA. In opposition to the motions, defendants contended, inter alia, that the EAJA does not apply to this action and that the fees sought by plaintiff and Logan-Baldwin were unreasonable.
Logan-Baldwin’s attorney issued a subpoena duces tecum directing the attorneys for defendants, Jaeckle, Fleischmann & Mugel, LLP (JEM), to produce
“[a] 11 documents, including but not limited to invoices, statements and New York State Standard Vouchers submitted by you to the State of New York for legal and paralegal services rendered by any member or employee of your firm and expenses and disbursements incurred in connection with your representation of any of the following parties to the above action,” which included defendants and former defendants.
Plaintiffs attorney likewise issued a subpoena duces tecum directing JEM to produce
“[a] 11 documents, including but not limited to invoices, statements and New York State Standard Voucher[s] submitted by you to the State of New York for legal and other non-attorney personnel services rendered by you and any member and/or employee of the firm of [JEM] and expenses and disbursements incurred in connection with your representation of the following parties,” which also included defendants and a former defendant.
Defendants moved to quash the subpoenas pursuant to CPLR 2304 contending, inter alia, that their fee records were irrelevant to the court’s determination of the reasonableness of the legal fees incurred by plaintiff.
Plaintiff and Logan-Baldwin appeal from the order denying their respective motions for, inter alia, attorneys’ fees and ex *191 penses pursuant to the EAJA. Supreme Court concluded that “the EAJA does not apply to a situation where a plaintiff has recovered compensatory damages for tortious acts of the State and its employees.” The court also in effect granted defendants’ motions to quash the subpoenas. We conclude that the order should be reversed insofar as appealed from inasmuch as the court erred in determining that the EAJA is inapplicable to this action and in granting in their entirety defendants’ motions to quash the subpoenas.
The Motions of Plaintiff and Logan-Baldwin
New York enacted the EAJA in 1989 in order “to create a mechanism authorizing the recovery of counsel fees and other reasonable expenses in certain actions against the state of New York” (CPLR 8600). The purpose of the EAJA is “to assist economically disadvantaged litigants in obtaining legal assistance in the prosecution of actions seeking to obtain redress from wrongful actions of the state” (.Matter of Scott v Coleman, 20 AD3d 631, 631 [2005], lv dismissed 5 NY3d 880 [2005]). To that end, the EAJA provides that eligible parties who prevail in a civil action against the State are entitled to legal fees and other expenses incurred in the prosecution of that action (see CPLR 8601 [b]). Eligible parties include those individuals “whose net worth, not including the value of a homestead used and occupied as a principal residence, did not exceed [$50,000] at the time the civil action was filed” (CPLR 8602 [d] [i]).
1. The Plain Meaning of the EAJA
In determining the applicability of the EAJA to this action, it is axiomatic that we must “turn first to the plain language of the statute[ ] as the best evidence of legislative intent” (Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review, 3 NY3d 563, 568 [2004]; see Majewski v BroadalbinPerth Cent. School Dist., 91 NY2d 577, 583 [1998]). CPLR 8601 (a) states that
“except as otherwise specifically provided by statute, a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust.”
The EAJA defines “ ‘[aJction’ ” as “any civil action or proceed *192 ing brought to seek judicial review of an action of the state as defined in subdivision (g) of [CPLR 8602], including an appellate proceeding, but does not include an action brought in the court of claims” (CPLR 8602 [a]). CPLR 8602 (g) defines “ ‘[s]tate’ ” as “the state or any of its agencies or any of its officials acting in his or her official capacity.”
We conclude that, under a plain reading of the statute, the EAJA applies to this action. The EAJA unambiguously applies to “any civil action brought against the state” (CPLR 8601 [a] [emphasis added]; see Matter of Greer v Wing, 95 NY2d 676, 680 [2001]), “except as otherwise specifically provided by statute” (CPLR 8601 [a]). As defendants acknowledge, the Human Rights Law does not specifically provide for counsel fees (see Executive Law art 15) and, accordingly, this action does not fall within that statutory exception (cf Matter of Beechwood Restorative Care Ctr. v Signor, 5 NY3d 435, 443 [2005]). The only other statutory exception is for “action[s] brought in the court of claims” (CPLR 8602 [a]). The instant action was commenced in Supreme Court pursuant to Executive Law § 297 (9) and thus does not fall within that exception.
Contrary to the contention of defendants and the conclusion of the court, there is nothing in the text of the EAJA that limits recovery of attorneys’ fees to CPLR article 78 proceedings or to declaratory judgment actions. Indeed, if the Legislature had intended the EAJA to apply exclusively to those types of proceedings, then the language excluding actions commenced in the Court of Claims would be unnecessary inasmuch as such proceedings do not generally fall within that court’s limited jurisdiction (see Court of Claims Act § 9; Matter of Capruso v New York State Police, 300 AD2d 27, 28 [2002] [the State is “not a ‘body or officer’ against whom a CPLR article 78 proceeding may be brought”]; Ferrick v State of New York, 198 AD2d 822, 823 [1993] [same]; Wikarski v State of New York, 91 AD2d 1174 [Court of Claims generally does not have authority to render a declaratory judgment]). It is well established that “legislation is to be interpreted so as to give effect to every provision^ and a] construction that would render a provision superfluous is to be avoided” (Majewski, 91 NY2d at 587).
Moreover, the EAJA was modeled on its federal counterpart that, notably, is not limited to proceedings brought to review administrative determinations. Rather, the federal Equal Access to Justice Act provides that,
“[e]xcept as otherwise specifically provided by stat *193 ute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States” (28 USC § 2412 [d] [1] [A]).
We agree with plaintiff and Logan-Baldwin that the court improperly characterized this action as a “tort action.” “A discrimination claim under the Human Rights Law is an action created by statute, which did not exist at common law, and therefore cannot give rise to tort liability” (Monsanto v Electronic Data Sys. Corp., 141 AD2d 514, 515 [1988]; see also Mills v County of Monroe, 89 AD2d 776 [1982], affd 59 NY2d 307 [1983], cert denied 464 US 1018 [1983]; Polvino v Island Group Admin., 264 AD2d 720 [1999]). In any event, “tort actions” are not specifically excluded from the scope of the EAJA (see CPLR 8602 [a]; see generally Matter of Alfonso v Fernandez, 167 Misc 2d 793, 798 [1995] [CPLR 8601 “applies to actions in any civil litigation . . . includ(ing) actions brought to enforce one’s civil rights, or to remedy a violation thereof, against the State”]).
Generally, where the language of a statute is clear and unambiguous, a court must give effect to its plain meaning (see Matter ofM.B., 6 NY3d 437, 447 [2006]; see also Matter ofPolan v State of N.Y. Ins. Dept., 3 NY3d 54, 58 [2004] [A “statute’s plain language is dispositive”]; Riley v County of Broome, 95 NY2d 455, 463 [2000] [“As a general rule, unambiguous language of a statute is alone determinative”]). As explained by this Court:
“ ‘Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation’ . . . , and the intent of the Legislature must be discerned from the language of the statute . . . without resort to extrinsic material such as legislative history or memoranda” (Matter of Rochester Community Sav. Bank v Board of Assessors of City of Rochester, 248 AD2d 949, 950 [1998], lv denied 92 NY2d 811 [1998]).
Of course, a court may look beyond the text of a statute where the plain language would lead to absurd, futile or unreasonable results (see New York State Bankers Assn. v Albright, 38 NY2d *194 430, 436-437, mot to amend remittitur granted 39 NY2d 744 [1976]). That principle, however, is “to be adopted with extreme caution and only where the plain intent and purpose of a statute would otherwise be defeated” (Bright Homes v Wright, 8 NY2d 157, 161-162 [1960]). If the language employed has “a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning” (Tompkins v Hunter, 149 NY 117, 123 [1896] [emphasis added]).
We conclude that the phrase “any civil action” contained in the EAJA means just that—any civil action, including this action seeking relief pursuant to the Human Rights Law. Defendants urge us to limit the scope of the EAJA based upon its legislative history. This we decline to do. Because attorneys’ fees are available to plaintiff under the plain language of the EAJA, there is no need to resort to legislative history to discern the intent of the Legislature (see Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 372-373 [2007]; Sega v State of New York, 60 NY2d 183, 191 [1983], rearg denied 61 NY2d 670 [1983] [“While legislative intent is the great and controlling principle . . . , it should not be confused with legislative history, as the two are not coextensive. Inasmuch as the legislative intent is apparent from the language of (the statute), there is no occasion to consider the import, if any, of the legislative memorandum” (citation omitted)]).
2. The Legislative History of the EAJA
Even if we were to consider the legislative history of the EAJA, we would reach the same result. Although defendants rely heavily on the 1982, 1983, 1984 and 1986 drafts of the bill, the text of the EAJA that was enacted into law in 1989 bears little resemblance to those prior versions. Notably, the earlier versions of the bill, which were vetoed by two Governors, were intended to amend the State Administrative Procedure Act rather than the CPLR. The 1982 bill explicitly excluded state employees from its purview and was limited to cases involving “judicial review of an agency action”—defined as “an action by a state agency [that] compels a regulated entity to act, enjoins a regulated entity from acting[ ] or fines a regulated entity” (1982 NY Assembly Bill A11940-A). According to one of its sponsors, the bill was designed to “cut red-tape and . . . relieve the regulatory burden on New York State small businesses” (Letter from Assemblyman Schimminger to Governor Carey, at 2, 1982 NY Assembly Bill A11940-A, Veto Jacket, Veto 273 of 1982). In *195 vetoing the 1982 bill, the Governor noted that the “bill has nothing to do with helping the poor to gain access to the courts to redress wrongs—its ‘Equal Access to Justice’ title is a misnomer—and that its clear intent is to discourage governmental entities from exercising legally mandated regulatory responsibilities with respect to business entities” (Governor’s Veto Message, at 2, 1982 NY Assembly Bill A11940-A, Veto Jacket, Veto 273 of 1982).
The 1983 and 1984 versions of the bill specifically limited recovery of attorneys’ fees to small businesses (see 1984 NY Senate Bill S9054-B; 1983 NY Senate Bill S434-A). The Governor’s veto messages again noted that the bills did not establish a policy of enabling the poor to gain access to the judicial forum but instead shifted to taxpayers the litigation costs of certain businesses (see Governor’s Veto Message, 1984 NY Senate Bill S9054-B, Veto Jacket, Veto 26 of 1984, at 14; Governor’s Veto Message, 1983 NY Senate Bill S434-A, Veto Jacket, Veto 71 of 1983, at 90).
In contrast to the earlier versions of the EAJA, the 1989 bill that was subsequently codified as CPLR article 86 contains no exclusion for state employees and is not limited to judicial review of “agency actions” (see L 1989, ch 770). Although the bill jacket for the 1989 bill contains statements suggesting that the primary intent of the bill was to award attorneys’ fees in proceedings challenging agency action or inaction, there is nothing in the bill jacket that evinces a legislative intent to restrict the application of the EAJA to those types of actions or to exclude actions such as the one at issue here from the purview of the statute. To the contrary, many statements contained in the bill jacket reflect a broader view of the 1989 bill. For example, a September 21, 1989 letter from one of the sponsors to the Governor states that the bill “would allow . . . individuals with a net worth of up to $50,000 (excluding their primary residence) to be reimbursed for their legal fees if they win a civil action brought against the State and the court finds that the State’s position lacks substantial justification” (Letter from Assemblyman Schimminger, Bill Jacket, L 1989, ch 770, at 6 [emphasis added]). The Assembly Memorandum in Support of Legislation likewise states that “certain parties who prevail in adversary adjudications and civil actions brought against the State of New York will be entitled to attorneys’ fees and related expenses unless the government action was substantially justified or special circumstances make an award unjust” (Bill Jacket, L 1989, ch 770, at 12 [emphasis added]).
*196 Similarly, the Report on Legislation (Report) issued by the Association of the Bar of the City of New York states that the 1989 bill “seeks to promote equal justice by authorizing an award of attorneys[’] fees and other reasonable expenses incurred by prevailing parties in civil proceedings, with the exception of tort actions, against the State” (Bill Jacket, L 1989, ch 770, at 55). The Report notes that
“[wjhile fees are currently available to parties who prevail in challenges to unjustified federal governmental action and to parties who prevail against the State on federal statutory or constitutional grounds, there is no State statute authorizing attorneys[’] fees to parties who successfully contest unreasonable State actions on state law grounds” (id. at 56 [emphasis added]).
The Report further observes that
“[b]ills denominated ‘Equal Access to Justice’ Acts have been passed by both houses of the state legislature during the past several years, only to be vetoed by the Governor. Those bills, however, were not truly Equal Access to Justice Acts because, although they assisted small businesses regulated by state agencies, they failed to confer any benefits on low income individuals seeking to enforce civil and legal rights through the courts” (id. at 57 [emphasis added]).
We thus conclude that the legislative history of the EAJA does not reveal a clear legislative intent to exclude the instant action from the purview of the statute. Although defendants contend that the Legislature did not intend the EAJA to apply to actions “seeking monetary damages for the tortious and/or otherwise wrongful acts of state officials generally, and an action for millions of dollars in damages for alleged sexual harassment and discrimination under the Human Rights Law particularly,” we note that the plain language of the EAJA contains no such exceptions. This Court may not “legislate under the guise of interpretation” (Bright Homes, 8 NY2d at 162) and, if application of the EAJA to this action is an unintended result of the plain language of the statute, then that is a consequence best left to the Legislature to evaluate and, if necessary, resolve (see Amorosi, 9 NY3d at 372-373).
*197 Defendants’ Motions to Quash
We further agree with plaintiff and Logan-Baldwin that the court erred in granting in its entirety defendants’ motions to quash the subpoenas duces tecum issued to JFM. “The standard to be applied on a motion to quash a subpoena duces tecum is whether the requested information is ‘utterly irrelevant to any proper inquiry’ ” (Ayubo v Eastman Kodak Co., 158 AD2d 641, 642 [1990]; see Calabrese v PHF Life Ins. Co., 190 AD2d 1069 [1993]). Here, we agree with defendants that the rates charged by JFM—a large firm representing government parties—are not relevant to whether the rates charged by plaintiff s attorney and Logan-Baldwin are reasonable (see Blowers v Lawyers Co-op. Publ. Co., Inc., 526 F Supp 1324, 1327-1328 [1981]; see also Chambless v Masters, Mates & Pilots Pension Plan, 885 F2d 1053, 1059 [1989], cert denied 496 US 905 [1990]). We cannot similarly conclude, however, that the number of hours expended by JFM in defending this matter is “ ‘utterly irrelevant’ ” to the reasonableness of the fees sought by plaintiff and Logan-Baldwin (Del Vecchio v White Plains Unit, Westchester County Ch., Civ. Serv. Empls. Assn., Local 860, 64 AD2d 975, 976 [1978]). “Pertinent to any consideration of a reasonable amount of time expended in the prosecution of a [lawsuit] is the amount of time expended by the defendants] in defending that [lawsuit]” (Mitroff v Xomox Corp., 631 F Supp 25, 28 [1985]; see Blowers, 526 F Supp at 1327 [“The amount of time spent by defendants’ attorneys on a particular matter may have significant bearing on the question whether plaintiff’s attorney(s) expended a reasonable (amount of) time on the same matter”]).
As the Eleventh Circuit stated in Henson v Columbus Bank & Trust Co. (770 F2d 1566, 1575 [1985]),
“[t]his litigation has been going on for over [10] years now. [The defendant] has spiritedly contested [the plaintiffs] claims at every stage, including the reasonableness of his petition for attorneys’ fees. While [the defendant] is entitled to contest vigorously [plaintiffs] claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended.”
Similarly, the instant litigation was commenced in 1995 involved no fewer than six prior appeals. Inasmuch as defendants contest the reasonableness of the fees sought by plaintiff *198 and Logan-Baldwin, they may not fairly contend that the amount of time expended by their own attorneys is irrelevant.
Thus, while the court ultimately may choose to disregard or discount the records sought by plaintiff and Logan-Baldwin based upon, inter alia, differences in the parties’ respective burdens and litigation incentives (see Serricchio v Wachovia Sec., LLC, 258 FRD 43, 45 [2009]; Coalition to Save Our Children v State Bd. of Educ. of State of Del., 143 FRD 61, 65 [1992]), that is not a proper basis upon which to grant defendants’ motions to quash the subpoenas.
We agree with defendants, however, that documents, including time records and/or invoices, pertaining to parties that have been dismissed from the action are not relevant and need not be produced in response to the subpoenas.
Finally, we note that Logan-Baldwin does not contend that the court erred in denying that part of her motion seeking discovery, and we therefore deem abandoned any issues with respect thereto (see Ciesinski v Town of Aurora, 202 AD2d 984 [1994]).
Conclusion
Accordingly, we conclude that the part of the order denying those parts of the motions of plaintiff and Logan-Baldwin for attorneys’ fees and expenses should be reversed and the matter remitted to Supreme Court to determine whether plaintiff and/or Logan-Baldwin are entitled to such fees and expenses under the EAJA and, if so, the reasonable amount of those fees and expenses. We further conclude that the part of the order granting defendants’ motions to quash the subpoenas duces tecum should be reversed, the motions denied in part, and defendants directed to produce only those documents pertaining to them. In light of our conclusion, we do not address the remaining contentions of the parties.